The next case we will hear is that of James Bentlejewski v. Werner Enterprises. Good morning. Newborg. Yes. May it please the Court, my name is John Newborg. I represent the appellant in this appeal. I would request five minutes for rebuttal time. Granted. Factually, this case involves my client who was a truck driver with the defendant, Werner Enterprises, for approximately a year. He quit and then he sought another job with another trucking company called Schneider. Everyone's probably seen it on the road. He was hired and then the Schneider asked Werner for information regarding. We have a pretty good handle, I think, Mr. Newborg, on the facts in the case. Let me start off by asking you about the conditional privilege, or perhaps I should say what conditional privilege obtains here. Mr. Bentlejewski seems to acknowledge that there is a conditional privilege merely by suggesting that a showing of negligence would be required here. So what we do know from our examination is that there exists in law both a state privilege and a federal privilege pursuant to the statute, the CFRs. What privilege ultimately did the district court look to in ruling in Werner's favor here? Well, the district court concluded that there was a conditional privilege for an employer to tell a prospective employer about their employee. That's agreed, but what the district court did is they said in order to show an abuse of that privilege, my client would have to prove that Werner acted with malice. And you say it should be a negligence then? Yes, I think that's very, very clear. Because of the Supreme Court's decision that took a different path than our not precedential opinion that preceded it, correct? Well, are you referring to the case involving the – well, there's the case, and I'm not sure which case you're referring to, but there's – Well, let me just cut to the chase. You say that actual malice is not the right standard. Yes, I do say that. Negligence is the right standard. Yes. All right. But how can we agree with you when Title 49 of the United States Code, Section 508B, and the related federal regulations have a knowingly false standard? Well, that's because, Your Honor, under the Hillsbury County Automated Medical Laboratory Supreme Court case, which I cite in my brief, the Supreme Court's very clear that regulations do not, as a rule, supersede state law. Federal regulations do not supersede state law? Correct. They certainly can. And what I found curious about this case, and, you know, I assume that Mr. Smith can enlighten me when he is at the podium, why this case was not fought out on preemption from the start. This is not only a classic preemption case with a regulatory scheme arising out of the commerce power and the regulations specifically of interstate commerce and the trucking industry. We've got explicit language within the regulation that speaks to preemption. And yet this was not an issue that apparently was addressed in the district court. Without a resolution of preemption, I mean, what do we have? The district court just says, well, I've got two conditional privileges here. Let me choose between them. Let me flip a coin. Well, preemption precludes flipping the coin. And it answers how you get to the one over the other. And if preemption applies, then certainly it's going to be the federal reg over what the Pennsylvania Supreme Court seems to have said here. Right? And that was one of my concerns with the district court opinion. It didn't address the regulations at all because it said, well, the standard is malice. The regulations don't say malice. But I do think that under the Supreme Court case, I decided that the state law is not preempted by this single regulation. And this is a question of state law interpretation of the law of libel. That's traditionally just been a state issue. There's no federal libel law. I'd like to bring to your attention something else that the Supreme Court in Pennsylvania said in American Futures. In a footnote, they make a comment that says what they're holding is not meant to do. And among them it is, quote, nor should it be understood to foreclose legislative creation of privileges, which may, within constitutional limitations, require a showing of fault greater than negligence. Isn't it fair to read that language to suggest that even the Pennsylvania Supreme Court recognized that the regulators, the legislatures could create additional privileges that could only be pierced at higher levels? And as a result, if that's a fair reading, then we don't really have a preemption problem. What we do have is a contemplated privilege with its own different level of fault. So how does your Hillsbury case and that language I just read to you reconcile? Well, I think the case the court just cited wasn't addressing federal regulations. I grant you that. It was the case in American Futures was about state law. I grant you that. Well, I think that, well, I just think the Pennsylvania Supreme, I mean, the U.S. Supreme Court case is so clear that a federal regulation is not going to preempt a state libel law. Because of Hillsborough? Hillsborough and also. In Hillsborough there was an express intent not to preempt state and local regulation. Don't we have precisely the opposite here? Well, no, because it's silent on whether there was an intent or not. The Supreme Court is saying that it has to be crystal clear there's an intent. You want to preempt state law with a federal regulation or else state law. You think it has to be expressly stated? In some fashion, yes. So you don't recognize the doctrine of implied preemption or conflict preemption? Not in terms of a federal regulation. It has to be expressed. Okay. Well, if I could just take a quote from the Supreme Court case, which I think answers the question. The Supreme Court says, even in the absence of the disavowal, the comprehensiveness of the FDA's regulation, as we remember this involves blood plasma, would not justify preemption. To infer preemption whenever a federal agency deals with a problem comprehensively would be tantamount to saying that whenever the agency decides to step into a field, its regulation will be exclusive. Such a rule would be inconsistent with the federal-state balance embodied in this Court's Supremacy Clause jurisdiction. I think that's very clear, that this regulation buried in the CFR was never intended to preempt state libel law that's, you know, been around for centuries. So I think. So despite its plain language, the CFR's plain language that says no action or proceeding for defamation, invasion of privacy or interference with a contract based upon the following may be brought, you're saying that the CFR is insufficient. Well, I'm saying it's insufficient in terms of a state where negligence is the standard. I'm saying that this CFR, one sentence in the CFR does not overrule Pennsylvania state law on whether it's negligence for some truck driver. And let me also just discuss the regulations on another tack. The regulations make a distinction between major accidents and minor accidents. These are all minor accidents, so you're really not getting involved in issues of public safety, as the appellee has argued. Well, but the distinction between accidents and minor accidents is a distinction made within the language of the federal regulation, isn't it? Yes. And that's why minor regulations aren't mandatorily reported. All right. They don't have to be mandatory. We will have you back on rebuttal then, Mr. Newbord. Thank you. Thank you. Mr. Smith. Your Honors, to use a transportation analogy, we took the wrong road but got to the right place. But you ignored a couple of signs along the way. Ignored a number of road signs along the way, and I apologize to the Court for being obtuse or at times being myopic. The trucking industry, as you're aware, is completely regulated by federal regulations. The very statute that requires a potential employer to seek the information that Werner provided requires Werner to provide that information and then provides the protections for following the statute. So all three minor accidents had to be reported under federal law? Under the federal regs, there are two sections of accidents that can be reported. And it's either, I call them the big three, fatality, dismemberment, or vehicles have to be towed, or the manner in which you regularly keep your accident information. Both. You being the employer. The employer. It's internal operating procedures and it's the records that it chooses to keep. Correct. So once Werner chose to keep these, it triggered the obligatory reporting? Once Werner chose to keep them and provide them in response to an employment verification. He still had the option to provide, right? Yes. He still had the option to provide that which was a minor accident information. You have the option to provide in the statute, but you have the same protection. If it really liked Fentel-Juski and wanted to help him out, it would have said we have nothing to add. It had the privilege to do that. I think if you keep them in that manner as Werner does, you have to provide them as you keep your accident information. Werner doesn't pick and choose. That's what I was asking. I'm sorry. Because Werner, for whatever reason, good business practices, who knows why, but because Werner chose to keep track of these accidents, it was required to report? Yes. If Werner keeps them that way, they produce them that way. They don't get to pick and choose based upon it being Bob today, Fred tomorrow. And the reason why they're kept is, quite honestly, frequency of minor accidents can be indicative of an accident going forward, and drivers are judged upon both minor and larger accidents. So the standard is clearly outlined. The district court, interestingly, used a malice standard and got there again by the wrong roadway. Perhaps I put up the wrong signs for them in the district court, but they defined their malice standard as knowingly providing false information. Which just happened to be the federal standard. Just happened to be the federal standard. You still have your good fortune. What they say about the blind squirrel. Let me ask you this. Could this panel reach the preemption question, notwithstanding the fact that it was not really fought out on this basis below and the district court did not grapple with preemption? It was briefed by us in our submission to the Third Circuit. We addressed the statute. The court also can find that the manner in which the district court reached its decision was harmless there. They got to the right place, may have made a mistake or rerouted along the way, but that mistake was harmless because the applied standard was correct. Do you think we need to reach preemption? Based upon the footnote language I read to your adversary where the Pennsylvania Supreme Court contemplated that the other branches could come up with other standards if they chose? Well, I think it shows you where you can go and that you're not forced to go to preemption, but that the ASF 2 case gives you that out. I don't think you have to eviscerate or overrule Pennsylvania law in any way. I think it is, if not controlled by federal regulation, then a plaintiff in a Pennsylvania defamation action may seek to prove their case via negligence rather than malice. I think you have that out without directly taking on federal preemption, but as far as what standard applies to the provision pursuant to the statute, it's federal reg because I think it would be patently unfair to force a former employer to produce that information or provide that information and then not afford him the same protections of the language or the standard for which he had to produce it. And your client relies on both the conditional privileges available under state law as well as the privilege available under the CFR, am I correct? Yes. And they can coexist even though they're different standards of proof for the state of mind, right? In most cases they do coexist, and I find Pennsylvania to be, from my research, in the minority of a negligence standard as opposed to the malice standard for the waiver of the conditional privilege. Most of the time they do coincide. So I actually have time on the clock and don't need it unless I have questions. We're not forcing you to say a word. But I know to sit. Thank you. Mr. Smith, thank you. And, Mr. Newborn, you may have the button. Thank you. Whether it's negligence or malice, the decision is wrong. These three accidents, we have solid photographs, videotapes, that these three accidents were reported falsely. How can you say that? Remember, it's not that they were reported falsely. I'm sorry, you did say that correctly when you talked about the report to the new employer. But let's just take the first example. According to the record, the defendant had in its own records information in which the plaintiff said he was the driver. Based on that information, they disclosed it to the new employer. Now come litigation, the client, or right before litigation, the client is now saying I really wasn't the driver. How can one say that that report was knowingly falsely made? Well, I want to answer that, but I want to quickly go to the last two accidents. One, when the trailer's sitting on a bunch of wooden pallets because it's got a landing gear leg missing, and then for them to tell an employer, prospective employer, that maintenance had nothing to do with the accident is just plain lying. That's a lie. But the problem, the reported accident, as I understand it from the record, was that the trailer door opened. And I don't know if there's any connection between the. That's not what my client testified to, though, in his deposition. He said that the guy had a forklift where he had put all these pallets. When he moved the forklift, the trailer shifted, and then they blame it on my guy when they gave him a defective trailer. That's an absolute lie. And then the third one's another lie. There's a videotape that doesn't show anything, but then they send out a letter that says the videotape shows him slamming into the loading dock. That's another lie. I mean, why doesn't this man get a trial? This is what is frustrating. Why doesn't he get a trial where he can testify, he can cross-examine, and the jury can decide? I mean, it's just frustrating. And let me get back to the first one. You know, Warner's not just one guy. It's a bunch of people. This guy over here tells my guy, I don't care whether you were the driver or not, you've got to sign this. But this guy over here doesn't know. That doesn't mean there's no liability. Well, don't we have to focus on what did the employer know when the employer made the statement? Did the employer know that it was a false statement to say the plaintiff was the driver when that's what their record said and it had nothing in front of it at the time it made the disclosure to suggest that that was a coerced statement? Well, I don't think that's necessarily true. Even if we were to assume that the standard to apply here is negligence and not the higher standard of malice, isn't your burden difficult? Because really it's a double burden. First, you've got to prove that the information is false. But then, as Judge Schwartz's questions, I think, are suggesting, then you've got to prove negligence in the actual transfer of this information on to the other prospective employer. I don't think it's difficult and I think I would win this case because they've got photographs. Do you agree that that's what you have to show? That you've got to show falsehood and then you've got to show some negligence. Yes. And actually determining that that falsehood, which may not be apparent to the individual transferring the information. Yes. And I can do it. I want to have a chance to do it for my client. And this cutting these things off of summary judgment, in this case, is just plain wrong. I've got tons of evidence to show that they've made false statements and they knew they were false. Not just negligence, they knew they were false. Thank you. Thank you. We thank both the counsel for their briefing and their argument and we thank the matter of advisor. Thank you.